CIVIL ACTION NO. H-06-00262
(*Consolidated with* CIVIL ACTION NO. H-05-02181)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**THE YORK GROUP, INC.,**

*Plaintiff,*

v.

**HORIZON CASKET GROUP, INC., ET AL.**

*Defendants.*

### YORK'S RESPONSE IN OPPOSITION TO DEFENDANTS'
### MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

**Jeffrey R. Parsons**
Texas Bar No. 15547200
Southern District of Texas ID 2411

ATTORNEY-IN-CHARGE
FOR THE YORK GROUP, INC.

OF COUNSEL:

Beirne Maynard & Parsons L.L.P.

**W. Michael Scott**
Texas Bar No. 17918420
Southern District of Texas ID 9987
**Bruce C. Morris**
Texas Bar No. 14469850
Southern District of Texas ID 14198
**David A. Walton**
Texas Bar No. 24042120
Southern District of Texas ID 57039
1300 Post Oak Blvd, 25th Floor
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... 2

TABLE OF AUTHORITIES ............................................................................. 3

APPENDIX OF EVIDENCE.............................................................................. 4

I.     Summary of Response .............................................................................. 5

II.    York's Second Amended Complaint Adds No New Causes of Action ............................. 7

III.   York Complied with the Court's Instructions ................................................... 9

IV.   Defendants Have Consistently Acknowledged and Defended Against Tortious Interference Claims..................................................................................... 10

     A.    Defendants' Amended Answer Acknowledges York's Tortious Interference Claims Concerning Other York Contracts .........................................11

     B.    Delta Defendants' Motion for Summary Judgment Acknowledges York's Tortious Interference Claims............................................................................11

     C.    Defendants' Motion for Leave to Designate Responsible Third Parties Acknowledges York's Tortious Interference Claims .........................................12

     D.    Delta Defendants' Motion to Consolidate Acknowledges York's Tortious Interference Claims............................................................................12

     E.    Delta Defendants' Second Amended Answer Acknowledges York's Tortious Interference Claims............................................................................13

     F.    Defendants Are Judicially Estopped From Contending Tortious Interference Has Not Been Pled Against Them ..........................................................13

V.    In the Alternative, York Seeks Leave to Amend ............................................. 15

     A.    York's Corporate Representative Put Defendants On Notice of York's Tortious Interference Claims in Deposition .................................................16

     B.    York's Expert Witness Put Defendants On Notice of York's Tortious Interference Claims in Expert Discovery...............................................16

     C.    Defendants' Written Discovery Demonstrates They Were On Notice of York's Tortious Interference Claims ...............................................17

VI.   Conclusion .......................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ahrens v. Perot Systems Corp.*, 205 F.3d 831 (5th Cir. 2000)................................................. 13, 14

*Brandon v. Interfirst Corp.*, 858 F.2d 266 (5th Cir. 1988) ............................................................ 14

*De La Hoya v. Coldwell Banker Mexico, Inc.*, 125 Fed. Appx. 533 (5th Cir. 2005)..................... 8

*Ergo Science, Inc. v. Martin*, 73 F.3d 595 (5th Cir. 1996) ........................................................... 13

*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227 (1962) .................................................................... 15

*Guthrie v. J.C. Penny Co.*, 803 F.2d 202 (5th Cir. 1986) ............................................................. 15

*Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391 (5th Cir. 2003) ....................................... 13, 14

*New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808 (2001).................................................. 14

*Penley v. Westbrook*, 146 S.W.3d 220 (Tex.App.—Fort Worth 2004, pet. granted) ..................... 8

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989) ........................................................... 7

**Rules**

FED. R. CIV. P. 15(a) ..................................................................................................................... 15

## APPENDIX OF EVIDENCE

**Exhibit A** - Bartolacci Deposition excerpts, dated April 7, 2006 ............................................ 5, 16

**Exhibit B** - Hearing Transcript excerpts, dated June 7, 2007 ................................................... 9, 10

**Exhibit C** - Bratic Expert Report excerpts, dated December 1, 2006 ......................................... 16

**Exhibit D** - Defendants' Request for Production (Nos. 1-53), served November 2, 2005 ........... 17

**Exhibit E** - Defendants' Second Request for Production (Nos. 1-71), served February 28, 2006
.................................................................................................................................. 17, 18

**Exhibit F** - Defendants' Third Request for Production (Nos. 1-5), served March 29, 2006 ........ 18

**Exhibit G** - Defendant Delta Casket Enterprises, Inc.'s Sixth Request for Production (Nos. 1-9),
served June 20, 2006 ................................................................................................. 18

**Exhibit H** - Yorktowne Document Subpoena, dated January 20, 2006 ...................................... 19

**Exhibit I** - York Southwest (a/k/a Royal) Document Subpoena, dated February 3, 2006 ........... 19

**Exhibit J** - Warfield-Rohr Document Subpoena, dated January 20, 2006 .................................. 19

**Exhibit K** - Letter from Walton to Frost re Warfield-Rohr subpoena, dated April 3, 2006 ........ 19

**Exhibit L** - Letter from Walton to Lowrey re Yorktowne and Royal subpoenas, dated August 28,
2006 .......................................................................................................................... 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| THE YORK GROUP, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. H-06-00262 |
| | § | (Consolidated with C.A. No. H-05-02181) |
| HORIZON CASKET GROUP, INC., *et al.*, | § | |
| Defendants. | § | |

## THE YORK GROUP INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE NANCY F. ATLAS:

The York Group, Inc. ("York"), Plaintiff, files this Response in Opposition to Defendants' Motion to Strike Plaintiff's Second Amended Original Complaint (the "Defendants' Motion") (Doc. # 134 and 138.)[1] In support, York respectfully shows the Court:

## I.    SUMMARY OF RESPONSE

With this Court's permission, York recently filed its Second Amended Complaint. (Doc. # 155, at 20-21, n. 44) ("York's Second Amended Complaint, filed with the Court's permission, explicitly asserts this claim against all Defendants.")  Thereafter, Horizon Casket Group, Inc. ("Horizon"), and Delta Casket Company, Inc., Delta Casket Enterprises, Inc., William W. Grubbs, Jr. and Gerald Kilpatrick (the "Delta Defendants") (collectively, "Defendants") filed Defendants' Motion to strike York's complaint based upon the unfounded claim that: (a) York

---

[1] Horizon filed a separate motion to strike (Doc. # 134) incorporating by reference the same reasons set forth in the Delta Defendants' motion to strike (Doc. # 138).  The Delta Defendants' motion to strike is based on whether tortious interference was pled against them.  It is undisputed that York contends Horizon tortiously interfered with certain York distributor contracts.  (Doc. # 5, in H-05-2181, at 12; Bartolacci Dep. - Ex. A, at 420:21-421:5; Doc. # 153, at 3-4 ("York claims that Horizon tortiously interfered with various distribution agreements it had with distributors.  York theorizes that Horizon 'participated in the scheme ..., with the knowledge that 'such conduct interfered or was likely to interfere with York's contracts with various of its distributors . . ..") (quoting York's Second Amended Complaint, at 12, ¶ 40)).  Accordingly, Horizon's motion is completely without merit.  For purposes of this Response (responding to both motions), York simply refers to the two motions jointly as "Defendants' Motion."

had not previously pled tortious interference against them; and (b) they would be unfairly prejudiced if such a claim were now permitted.

Even a cursory review reflects that Defendants' Motion is unfounded and disingenuous. In sum, York pled tortious interference against the Delta Defendants as early as York's First Amended Complaint. (Doc. # 155, at 20-21, n. 44) ("During the discovery hearing held on June 7, 2007, however, the Court held that York's First Amended Complaint [Doc. # 5 in Case No. 05-2181] was adequate, under notice pleading standards, to support a tortious interference claim against the Delta Defendants as well.") These defendants were on notice of the claim and actually pled the affirmative defense of justification in defense of the tortious interference claim. They conducted discovery on the claim and even moved for summary judgment on the claim that they now say has never been raised before.

More specifically, York filed its First Amended Complaint on July 8, 2005, stating in the very first sentence: "This is an action for breach of contract, unfair competition, trademark and copyright infringement *and other torts.*" (Doc. # 5, in H-05-2181, at 1) (emphasis added). York describes the essence of the defendants' [i.e., all defendants] wrongful conduct in paragraph 19: "Defendants have imported counterfeit caskets and then advertised, marketed, promoted and sold them in interstate commerce as part of a scheme to 'pass off' the counterfeits as York products." (*Id.*, at 6.) York then goes on to plead that the defendants' wrongful conduct intentionally interfered with York's contract rights. In paragraph 21, York alleges that "defendants' unlawful actions were willful, deliberate, fraudulent and with blatant disregard of York's property rights . . .." (*Id.*, at 7.) All these allegations were specifically incorporated by reference into Count IV, "Tortious Inference."

York believed its complaint had placed Defendants on notice of York's tortious interference claim against them. In fact, the record reflects that it did just that. On August 18, 2006, Defendants filed their First Amended Answer and therein raised the affirmative defense of justification to York's tortious interference claim against them. Paragraph 11 of their First Amended Answer specifically pleads: "To the extent that the Defendants interfered with any of Plaintiff's contractual obligations with other York distributors . . . Defendants assert the affirmative defense of justification . . .." (Doc. # 97, in H-05-2181, at 9.)

Certainly, Defendants' First Amended Answer alone reflects that Defendants' Motion is unfounded and disingenuous. Yet, there is more. On April 5, 2007, the Delta Defendants actually filed a motion for summary judgment (Doc. # 142, in H-05-2181) on the very claim of tortious interference that they now claim was never before raised against them. Defendants' Motion is utterly unfounded and should be denied.

## II. YORK'S SECOND AMENDED COMPLAINT ADDS NO NEW CAUSES OF ACTION

York has consistently prosecuted, and the Delta Defendants have defended against, a tortious interference claim. As detailed above, York's First Amended Complaint presents facts and allegations sufficient to raise a claim of tortious interference. (Doc. # 5, in H-05-2181.) Moreover, the Delta Defendants acknowledged that they did so, and consequently they raised the affirmative defense of justification. (Doc. # 97, in H-05-2181, at 9); *see also Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989) (stating that a party asserting the privilege of justification ***does not deny the interference*** but rather seeks to avoid liability based upon a claimed interest that is being impaired or destroyed by the plaintiff's contract).

Moreover, as noted above, the Delta Defendants actually moved for summary judgment on the very claim of tortious interference that Defendants' Motion now claims was never before

raised. In their motion for summary judgment, they judicially admitted that York had pled tortious interference against them, stating:

> Partial summary judgment should be granted to [Delta Casket Company, Inc.] and [Delta Casket Enterprises, Inc.] on York's tortious interference with contract claims to the extent that they are based upon interference with other distributors' unenforceable "best efforts" clauses in their distribution agreements or the meeting of quotas . . . York here alleges that the Defendants tortiously interfered with, *inter alia*, the best efforts clauses in the distribution agreements of the Melton co-defendants and other distributors.

(Doc. # 142, in H-05-2181, at 17-19.) Contrary to the Delta Defendants' representation that the Second Amended Complaint would require them "to all of sudden start defending against a tortious interference claim," the pleadings and papers in this cause demonstrate that they have been defending against the claim for at least 10 months (i.e., from at least August 18, 2006, when they filed their First Amended Answer) and, as discussed below, for many months more.

While Count IV of the First Amended Complaint was only labeled "Tortious Interference Against Horizon," the very first paragraph of that Count "re-alleges and incorporates by reference the preceding paragraphs." Thus, incorporated into that Count of the complaint were the allegations that all defendants had tortiously interfered with York's contracts: i.e., that all defendants engaged in a wrongful scheme to pass-off Chinese caskets as York's products and that defendants' wrongful conduct intentionally interfered with York's contract rights. If not by these pleadings alone, then certainly by defendants' subsequent pleading of an affirmative defense to the tortious interference claim and by their moving for summary judgment on that claim, it is evident that York met the fair notice pleading standard. *See De La Hoya v. Coldwell Banker Mexico, Inc.,* 125 Fed. Appx. 533, 537 (5th Cir. 2005) (quoting *Penley v. Westbrook*, 146 S.W.3d 220, 232 (Tex. App.—Fort Worth 2004, pet. granted)) ("Texas follows a 'fair notice' pleading standard, ***which looks to whether the opposing party can ascertain from the pleading***

*the nature and basic issues of the controversy* and what testimony will be relevant at trial.")
(emphasis added).

And, there is more to establish that Defendants' Motion is unfounded. In response to Defendants' Motion to Consolidate, on April 27, 2007, this Court consolidated York's lawsuit against Horizon and the Delta Defendants into Case No. 06-00262, *The York Group, Inc., v. York Southern, Inc., et. al.* Following consolidation, the case proceeded under two live complaints. The First Amended Complaint in *The York Group, Inc., v. York Southern, Inc., et. al.* — one of the live complaints — expressly states that "[T]he Melton Defendants, and those acting in concert with them [previously defined in the Complaint as William Grubbs, Gerald Kilpatrick, Delta Casket, and Delta Enterprises, *i.e.*, the Delta Defendants], intentionally interfered with York's contract with various York distributors, including but not limited to Delta Casket, Delta Enterprises, Yorktowne, Warfield-Rohr, Royal and Ellis Melton." (Doc. # 12, at 8.)[2] Thus, while York maintains that it pled tortious interference against the Delta Defendants by its First Amended Complaint, following consolidation there is no doubt that such a claim has been pled against the Delta Defendants.

## III.   <u>YORK COMPLIED WITH THE COURT'S INSTRUCTIONS</u>

York's Second Amended Complaint complies with the Court's instructions. At the hearing of June 7, 2007, York's counsel explained to the Court, "[This is] a case of a third-party corporate entity . . . tortiously interfering with our contracts with various distributors, including Delta, that these two individuals participated in." (H'rg Tr. - Ex. B, at 6.) Following this discussion, this Court ordered York "not to expand [its claims]," but to "plead how . . . [William

---

[2] Moreover, on January 24, 2006, at the first scheduling conference for Case No. 06-00262, *York v. York Southern, et al.*, this Court consolidated the cases for purposes of discovery. As discussed below, the Delta Defendants have been involved throughout the consolidated discovery of both actions and have copies of documents underlying York's claims for tortious interference.

W. Grubbs, Jr., and Gerald Kilpatrick], and/or anyone else . . . [York is] trying to get exemplaries from, conducted themselves to warrant exemplaries." (H'rg Tr. - Ex. B, at 11-12.) York's Second Amended Complaint raises no new claims and, instead, seeks only to comply to the Court's directive to marshal the facts on which it relies.

In Defendants' Motion, Defendants mischaracterize the statements made by York's counsel at the hearing. Specifically, they imply that York asserted that it was not pursuing a tortious interference claim against any party other than Horizon. (Doc. # 138, at 3.) This implication is false. York's counsel clearly stated, as quoted above, that Horizon along *with the individual defendants* tortiously interfered with York's contracts with various distributors. (H'rg Tr. - Ex. B, at 6-7.) Again, in response to the Court's inquiry: " . . . [S]o your point is [William W. Grubbs, Jr., and Gerald Kilpatrick] conspired with others to tortiously interfere in the contract between distributors and York," York's counsel replied, "Yes." (H'rg Tr. - Ex. B, at 8.) Following this discussion, York's counsel offered to file an amended complaint that specifically set out what he had just told the Court. (H'rg Tr. - Ex. B, at 9.) In response, the Court stated: " . . . I want you to file the definitive complaint because it will be the basis against which we measure everything else . . . you can clarify your position." (H'rg Tr. - Ex. B, at 9-10.) And, that is exactly what York did.

As more thoroughly discussed in the section below, the Second Amended Complaint serves only to clarify and reiterate matters that the parties have acknowledged and discussed throughout the litigation.

## IV.  DEFENDANTS HAVE CONSISTENTLY ACKNOWLEDGED AND DEFENDED AGAINST TORTIOUS INTERFERENCE CLAIMS

Defendants cannot fairly claim surprise or prejudice. The following is a demonstrative, not exhaustive, list of excerpts from the various pleadings in which the Delta Defendants

acknowledge that York has pled that they tortiously interfered with York's distributor agreements:

**A.**     **Defendants' Amended Answer Acknowledges York's Tortious Interference Claims Concerning Other York Contracts**

On August 18, 2006, in Defendants' Amended Answer, Defendants stated: "To the extent that the Defendants *interfered* with any of Plaintiff's contractual obligations with other York distributors (which is denied), the Defendants assert the affirmative defense of justification in so far as the alleged *interference* was an exercise of the Defendants' legal rights and/or a good faith claim to a colorable legal right." (Doc. # 97, in H-05-2181, at 9.)

**B.**     **Delta Defendants' Motion for Summary Judgment Acknowledges York's Tortious Interference Claims**

On April 5, 2007, in the Delta Defendants' Motion for Summary Judgment, the Delta Defendants recognized: "York is also seeking to hold the Delta entities liable for *tortious interference* with other distributors agreements, specifically the 'best efforts' clauses." (Doc. # 142, in H-05-2181, at 6.) Defendants further acknowledged:

- o "York is seeking to hold the Delta entities liable based on a claim that they *interfered* with other distributor agreements' best efforts clauses." (Doc. # 142, in H-05-2181, at 8.)

- o "Summary judgment is also appropriate for Gerald Kilpatrick and Bill Grubbs on York's *tortious interference* with contract claims." (Doc. # 142, in H-05-2181, at 10.)

- o "York here alleges that the Delta Defendants *tortiously interfered* with, inter alia, the best efforts clauses in the distribution agreement of the Melton co-defendants and other distributors." (Doc. # 142, in H-05-2181, at 18.)

**C.      Defendants' Motion for Leave to Designate Responsible Third Parties Acknowledges York's Tortious Interference Claims**

On April 26, 2007, in their Motion for Leave to Designate Responsible Third Parties, Delta Defendants note: "Plaintiff acknowledges and has alleged that the conspiracy involved alleged conspirators other than just the Delta Defendants . . . Plaintiff alleges that the 'conspirators' *tortiously interfered* with contracts with various York distributors 'to continue their participation in the Chinese casket scheme, knowing that such participation would breach and devalue the distributor's contractual obligations to York.'" (Doc. # 159, in H-05-2181, at 2.)

**D.      Delta Defendants' Motion to Consolidate Acknowledges York's Tortious Interference Claims**

On April 26, 2007, in the Delta Defendants' Motion to Consolidate, they confirm: "In both cases, [York] alleged that the parties conspired to manufacture and sell counterfeit caskets and that such alleged conduct constitutes unfair competition, trademark infringement, breach of the contract, *tortious interference*, copyright infringement, and conspiracy for which York seeks not only injunctive relief, but damages, both actual and punitive." (Doc. # 163, in H-05-2181, at 2.)

- o   "York asserts similar, if not identical, causes of action against the Defendants in both cases sought to be consolidated, which would clearly involve similar issues of law and similar factual proof." (Doc. # 163, in H-05-2181, at 3-4.)

- o   "In both cases, it is alleged that the respective Defendants conspired with and among the Defendants and "others"; and that the alleged conduct which was allegedly carried out in furtherance of the alleged conspiracy resulted in copyright infringement, *tortious interference* with contract, breach of contract, and conspiracy." (Doc. # 163, in H-05-2181, at 4.)

**E.** **Delta Defendants' Second Amended Answer Acknowledges York's Tortious Interference Claims**

Finally, on June 14, 2007, the Delta Defendants filed their Second Amended Answer, following the recent discovery hearing at which the Court allowed Defendants to raise several new affirmative defenses (i.e., proportionate responsibility, entitlement to credits and offsets, one recovery rule, payment, release and accord and satisfaction, and Grubbs and Kilpatrick are not liable in their individual capacity). In the Second Amended Answer, the Delta Defendants again declare: "To the extent that the Defendants interfered with any of Plaintiff's contractual obligations with other York distributors (which is denied), the Defendants assert the affirmative defense of justification in so far as the alleged interference was an exercise of the Defendants' legal rights and/or a good faith claim to a colorable legal right." (Doc. # 126, at 8-9.)

The foregoing excerpts lead to the inescapable conclusion that the Delta Defendants' have repeatedly, judicially admitted that York has long pled tortious interference against them; and, therefore, their present claims to the contrary are meritless.

**F.** **Defendants Are Judicially Estopped From Contending Tortious Interference Has Not Been Pled Against Them**

Further, York asserts that the doctrine of judicial estoppel bars the claims now asserted in Defendants' Motion, for such claims are directly contradicted by the pleadings and papers that these defendants have previously filed. Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)). Under this doctrine, the Fifth Circuit has required that two factors be satisfied before a party can be estopped. *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir. 2000). First, it must be shown that "the position of the party to be estopped is clearly inconsistent with its previous one; and [second,]

that party must have convinced the court to accept that previous position." *Id*. It is clear that the Delta Defendants' position in Defendants' Motion is inconsistent with the positions that they have asserted throughout this litigation, as shown in their (i) affirmative defense, (ii) motions filed with this Court; and (iii) discovery requests. Additionally, the Delta Defendants undeniably attempted to convince the Court to accept their "previous position" by filing the pleadings with the Court and requesting a ruling on the Motion for Summary Judgment on the claim for tortious interference. *See Hall*, 327 F.3d at 398-99 ("The 'judicial acceptance' requirement does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits . . . [T]he doctrine may be applied whenever a party makes an argument 'with the explicit intent to induce the district court's reliance.') (internal citations omitted).

In addition to these two factors, which are primarily relied on in this Circuit, the Supreme Court has articulated a third: "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hall*, 327 F.3d 391, 399 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). Indeed, it is York that has been prejudiced by these defendants' conduct, and they should be estopped to claim that tortious interference was not pled in York's First Amended Complaint or that they did not have fair notice of such claim. *See Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988) ("[A] party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position."). Because the Delta Defendants have consistently pled as if they were aware of the claim for tortious interference and consistently defended against this legal theory, this Court should not entertain their claims of surprise and prejudice. To do so would only serve to unfairly deprive York of a cause of action that it has consistently pursued throughout this litigation.

## V.    IN THE ALTERNATIVE, YORK SEEKS LEAVE TO AMEND

To the extent the same should be necessary, York requests leave to amend its First Amended Complaint by the filing of the Second Amended Complaint. The FEDERAL RULES OF CIVIL PROCEDURE provide that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The decision to grant or deny leave to amend lies within the sound discretion of the district court. *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 210 (5th Cir. 1986). In exercising its discretion, the district court may consider a variety of factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962).

Here, there has been no undue delay, bad faith or dilatory motive on the part of York with respect to its pleading of tortious interference against the Delta Defendants. To the contrary, for many months York was led to believe that the Delta Defendants understood that tortious interference had been pled against them by York's First Amended Complaint. There is no issue of any failure by York to cure a deficiency in its pleadings at the request of this Court. And, finally, it is obvious that there will be no undue prejudice to the Delta Defendants from York's pleading of tortious interference against them, as they have been defending against the allegations from at least August 18, 2006, when they filed their First Amended Answer, and presumably long before then. Contrary to the Delta Defendants' allegation that these "new claims" will require them to "expend significant resources to conduct discovery and prepare for trial," (Doc. # 138, at 6), they have been on notice of the claim for at least 10 months, and have pursued extensive discovery on this legal theory.

### A.    York's Corporate Representative Put Defendants On Notice of York's Tortious Interference Claims in Deposition

More than fourteen months ago, on April 7, 2006, counsel for the Delta Enterprises and Delta Casket Company, cross examined York's corporate representative, Joseph Bartolacci, on York's claim of tortious interference. Mr. Bartolacci testified:

> We are alleging -- I want to be clear here. We're not -- when you're isolating an individual defendant here, I don't want to make claim that only one of those defendants is responsible for the tortious interference. This is a collective scheme. So, the tortious interference claim really relates to the tortious interference that Horizon **and others have caused having interfered with the distribution agreements of the various parties mentioned.**[3]

(Bartolacci Dep. - Ex. A, at 422:13-22) (emphasis added). This testimony shows that the Delta Defendants had actual knowledge of York's claim of tortious interference was not just against "only one of those defendants" but against all defendants as it was a "collective scheme."

### B.    York's Expert Witness Put Defendants On Notice of York's Tortious Interference Claims in Expert Discovery

Additionally, in the expert report of Walter Bratic, York's economic expert, Mr. Bratic clearly stated, "In addition, I understand it is York's position that the Delta Defendants acted to tortiously interfere with York's contractual relationships with the other members of the Horizon Group." (Bratic Rep. - Ex. C., at 15, ¶ 40.) The report defined "Horizon Group" as "Delta Enterprises, Melton Company, Inc., Yorktowne Caskets, Inc., Warfield-Rohr Casket Company and Royal Casket Company." (Bratic Rep. - Ex. C, at 4, ¶ 7.)

---

[3] The various parties mentioned on the previous page of the deposition include Royal, Delta Casket, Warfield-Rohr, York Southern, and Yorktowne. (Bartolacci Dep. - Ex. A, at 421:2-5.) ("It has interfered with Royal's contract, Delta Casket Enterprises' contract, Warfield-Rohr's contract, York Southern, and Yorktowne's contract and Delta'-- Delta Casket Enterprises' expired contract.")

C.   **Defendants' Written Discovery Demonstrates They Were On Notice of York's Tortious Interference Claims**

Finally, the following is a list of several, but not all, of the discovery requests to which York has responded and produced documents with respect to its claim that the Delta Defendants tortiously interfered with York's distributor contracts:

- Defendants' Request for Production (Nos. 1-53), served November 2, 2005:

  o RFP No. 14 - "All documents constituting, evidencing, concerning, and/or referring to caskets made in China being marketed and/or sold by any of the Delta Companies, Horizon, Royal Casket Co., Yorktowne Caskets, Inc., Melton Company, Inc. and/or Warfield-Rohr Casket Co., Inc." (Ex. D, at 6.)

- Defendants' Second Request for Production (Nos. 1-71), served February 28, 2006:

  o RFP No. 37 - "All distributorship agreements with Warfield-Rohr Casket Company." (Ex. E, at 7.)

  o RFP No. 38 - "All communications with Warfield-Rohr Casket Company about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement." (Ex. E, at 7.)

  o RFP No. 39 - "All distributorship agreements with Melton Company (also known as York Southern)." (Ex. E, at 7.)

  o RFP No. 40 - "All communications with Melton Company (also known as York Southern) about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement." (Ex. E, at 7.)

  o RFP No. 41 - "All distributorship agreements with Yorktowne Casket Company." (Ex. E, at 7.)

  o RFP No. 42 - "All communications with Yorktowne Casket Company about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement." (Ex. E, at 7.)

  o RFP No. 43 - "All distributorship agreements with Royal Casket Company (also known as York Southwest)." (Ex. E, at 7.)

  o RFP No. 44 - "All communications with Royal Casket Company (also known as York Southwest) about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement." (Ex. E, at 7.)

- o RFP No. 45 - "All documents constituting, evidencing, concerning, relating, or referring to any Chinese caskets imported, purchased, designed, or sold by Horizon or Delta Casket Company, Delta Casket Enterprises, Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company." (Ex. E, at 7.)

- o RFP No. 46 - "All documents evidencing, concerning, relating, or referring to any communications with, to, or from any of Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company concerning or referring to any Chinese caskets." (Ex. E, at 8.)

- o RFP No. 47 - "All documents evidencing, concerning, relating, or referring to any meeting or conversation between York and any of Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company regarding Horizon or Chinese caskets." (Ex. E, at 8.)

- o RFP No. 48 - "All documents evidencing, concerning, relating, or referring to any communications concerning or referring to any Horizon casket with, to, or from any of Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company." (Ex. E, at 8.)

- o RFP No. 49 - "All communications with, to, or from any of Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company concerning, relating, or referring to Delta Casket Enterprises, Delta Casket Company, or DELTAurora." (Ex. E, at 8.)

- Defendants' Third Request for Production (Nos. 1-5), served on March 29, 2006:

  - o RFP No. 4 - "All distributor agreements between York, and Yorktowne, York-Southern, York-Southwest, and/or Warfield-Rohr in effect at anytime during 2002-2005." (Ex. F, at 5.)

- Defendant Delta Casket Enterprises, Inc.'s Sixth Request for Production (Nos. 1-9), served June 20, 2006:

  - o RFP No. 4 - "All Documents and other items received by York pursuant to any subpoena(s) to Yorktowne Casket Company." (Ex. G, at 6.)

  - o RFP No. 5 - "All Documents and other items received by York pursuant to any subpoena(s) to Royal Casket Company." (Ex. G, at 6.)

York produced hundreds of documents responsive to the foregoing requests for production, all of which is relevant to York's tortious interference claims. Therefore, substantial discovery has taken place with respect to York's claim that the Delta Defendants tortiously interfered with York's distributor contracts.

Throughout the consolidated discovery, voluminous documentation has been produced by the parties and third-parties[4] concerning, among other things relevant to the tortious interference claims, the purchases, sales, discounts, variable costs, and profits as to each of the distributors in question. For example, the Delta Defendants' sworn interrogatories include a document identifying each Chinese casket purchased by the various collusive distributors. (Doc. # 78, at Ex. C.) Further, York has produced a detailed spreadsheet identifying all York casket purchases by collusive distributor, along with the associated discounts, costs, profits, etc. Thus, because the parties have consistently pursued and exchanged information on York's claim against the Delta Defendants for tortiously interfering with the distributor agreements, the Delta Defendants have no just claim for prejudice or undue delay.

## VI.  CONCLUSION

The pleadings and discovery which have been filed and exchanged throughout this litigation clearly demonstrate that the parties have pursued and defended against a claim against the Delta Defendants for tortious interference. For these reasons, York requests this Court deny Defendants' Motion to Strike Plaintiffs' Second Amended Original Complaint, and for all such other and further relief as this Court deems just and proper.

---

[4] York served document subpoenas on third-parties, including Yorktowne, Royal and Warfield-Rohr, for various documents concerning York's claims. (Yorktowne Doc. Subpoena - Ex. H; York Southwest (a/k/a Royal) Doc. Subpoena - Ex. I; Warfield-Rohr Doc. Subpoena - Ex. J.) The documents obtained under these subpoenas were produced to Defendants. (Walton Letter to Frost - Ex. K; Walton Letter to Lowrey - Ex. L.)

Respectfully submitted,

By:   /s/ Jeffrey R. Parsons
**Jeffrey R. Parsons**
Texas Bar No. 15547200
Southern District of Texas ID 2411
**BEIRNE, MAYNARD & PARSONS, L.L.P.**
1300 Post Oak Blvd, 25th Floor
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE**
**FOR THE YORK GROUP, INC.**

**OF COUNSEL:**

**BEIRNE, MAYNARD & PARSONS, L.L.P.**

**W. Michael Scott**
Texas Bar No. 17918420
Southern District of Texas ID 9987
**Bruce C. Morris**
Texas Bar No. 14469850
Southern District of Texas ID 14198
**David A. Walton**
Texas Bar No. 24042120
Southern District of Texas ID 57039
1300 Post Oak Blvd, 25th Floor
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **The York Group, Inc.'s Response in Opposition to Defendants' Motion to Strike Plaintiff's Second Amended Original Complaint** was sent to the following attorneys-of-record by U.S. First Class mail, certified mail, return receipt requested, and/or electronic notice on this 11th day of July, 2007.

**Mr. Charles E. Frost, Jr.**                                   *Via CM/ECF Notice*
CHAMBERLAIN HRDLICKA WHITE WILLIAMS               *and U.S. First Class Mail*
& MARTIN, P.C.
1200 Smith Street, Suite 1400
Houston, Texas 77002-4310

**Mr. Mark A.J. Fassold**                                       *Via CM/ECF Notice*
JACKSON WALKER, L.L.P.                                    *and U.S. First Class Mail*
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205


 /s/ David A. Walton
David A. Walton