**YORK'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

# EXHIBIT A

01-23262
DLL/comp

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DELTA CASKET ENTERPRISES, INC. <br> DELTA CASKET COMPANY, INC., and <br> DELTAURORA, LLC., <br><br> Plaintiffs, <br><br> VS. <br><br> THE YORK GROUP, INC., d/b/a/ <br> YORK CASKET COMPANY <br><br> Defendants. <br><br><br> THE YORK GROUP, INC., <br><br> HORIZON CASKET GROUP, INC., ET AL | C.A. NO. 4:05-5-cv-03796 <br> JUDGE ATLAS <br><br><br><br><br><br><br> Civil Action No. 05-2181 |

SUBJECT TO CONFIDENTIALITY ORDER
ENTERED BY JUDGE WERLEIN

PORTIONS OF THIS DEPOSITION AND EXHIBITS
ARE DESIGNATED LAWYER-CONFIDENTIAL

DO NOT READ UNLESS YOU MEET ALL THE PROVISIONS
OF THE CONFIDENTIALITY ORDER

VIDEOTAPED DEPOSITION OF:

# JOSEPH C. BARTOLACCI
VOLUME 2

APRIL 7, 2006

**COPY**



*Systems Technology for the Litigation World*

Litigation Group ♦ Court Reporting ♦ Video Production ♦ Videoconferencing

For U.S & International Services
800 - 745 - 1101

1  detrimental to the sale and distribution of the products
2  or to the reputation or goodwill of York or the
3  products."
4      Q.  Does this Section 6.6(e) from which you just
5  read --
6      A.  Uh-huh.
7      Q.  -- mean that if Delta Casket Enterprises
8  ceased selling York products and began selling
9  Batesville products, that that would be detrimental to
10 the sale and distribution of -- of York products?
11     A.  Sir, it -- it means what it says.  They will
12 not do anything in any manner -- they will -- the
13 distributor agrees that it will not act in any manner
14 detrimental to the sale and distribution of the products
15 or to the reputation of goodwill of York or the
16 products.
17          I can't answer the hypothetical as to
18 whether or not selling a Batesville product would
19 violate that provision.  I can answer that what has
20 transpired is a violation of that provision.
21     Q.  What injury does York contend that it has
22 suffered as a result of Horizon's alleged interference
23 with a contract?
24     A.  Which contract?
25     Q.  Well, which contract does York contend that

1 Horizon has interfered with?
2     A.  It has interfered with Royal's contract, Delta
3 Casket Enterprises' contract, Warfield-Rohr's contract,
4 York Southern, and Yorktowne's contract and Delta's --
5 Delta Casket Enterprises' expired contract.
6     If I hadn't said that earlier, excuse me
7 if I've repeated myself.
8     Q.  What injury does York contend that it has
9 suffered as a result of Horizon's alleged interference
10 with Royal's distributor agreement?
11     A.  Lost sales and profits and causing them to
12 breach their contractual obligations to use the best
13 efforts under the agreement and not do any harm as
14 described earlier.
15     Q.  What is the amount of the alleged injury that
16 York contends that it has suffered?
17     A.  I'm not sure that we have quantified the
18 damages. But I'm sure our -- our -- we will retain an
19 expert to assist us with that, and we will be looking at
20 the lost discounts, lost sales and the profits
21 therefrom.
22     Q.  What injury does York contend that it has
23 suffered as a result of Horizon's alleged interference
24 with Delta Casket Enterprises' distributor agreement?
25     A.  The injuries derived from the breach of the

1  contract that was just tortiously interfered with by
2  Billy Grubbs, Gerald Kilpatrick and Delta Casket
3  Company, are the loss of sales and profits in that
4  territory, as well as any diminution of our goodwill in
5  that territory.
6     Q.  What is the amount of the alleged injury that
7  York contends it has suffered?
8     A.  We will retain an expert witness to help us
9  develop that information, sir.  I am not that person.
10    Q.  What injury does York contend that it has
11 suffered as a result of Horizon's alleged interference
12 with Warfield-Rohr's agreements with York?
13    A.  We are alleging -- I want to be clear here.
14 We're not -- when you're isolating an individual
15 defendant here, I don't want to make claim that only one
16 of those defendants is responsible for the tortious
17 interference.
18         This is a collective scheme.  So, the
19 tortious interference claim really relates to the
20 tortious interference that Horizon and others have
21 caused having interfered with the distribution
22 agreements of the various parties mentioned.
23    Q.  What injury does York contend that it has
24 suffered as a result of Horizon's alleged interference
25 with Warfield-Rohr's agreements with York?

```
1  THE STATE OF TEXAS   )
2  COUNTY OF HARRIS     )
```

I, DONNA L. LeVASSEUR, a Certified Shorthand Reporter in and for the State of Texas, do hereby certify to the following:

That the witness, JOSEPH C. BARTOLACCI, VOLUME 2, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on _____, 2006, to the witness, or to the attorney for the witness, for examination, signature, and return to Worldwide Court Reporters, Inc., by _____, 2006.

That the amount of time used by each party at the deposition is as follows:

Mr. Charles E. Frost, Jr. - 4 hours, 16 minutes

Mr. Douglas H. Elliott - 1 hour, 43 minutes

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or

1  otherwise interested in the outcome of the action.
2  　　　GIVEN UNDER MY HAND AND SEAL OF OFFICE, on this, the
3  _____ day of April, 2006.
4
5
6  　　　　　　　　　　　　_____
7  　　　　　　　　　　　　DONNA L. LeVASSEUR, TEXAS CSR NO. 4785
　　　　　　　　　　　　Expiration Date:  12-31-07
8
9  WORLDWIDE COURT REPORTERS, INC.
10 Firm Registration No. 223
　  3000 Weslayan, Suite 235
11 Houston, Texas  77027
　  (800) 745-1101
12
13
14
15
16
17
18
19
20
21
22
23
24
25