**YORK'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

# EXHIBIT D

| | | |
|---|---|---|
| THE YORK GROUP, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C. A. NO. 05-2181 |
| | § | |
| HORIZON CASKET GROUP, INC., | § | |
| DELTA CASKET COMPANY, INC., | § | |
| DELTA-SOUTHERN CASKET | § | |
| COMPANY, INC., DELTA CASKET | § | |
| ENTERPRISES, INC., WILLIAM W. | § | |
| GRUBBS, JR. AND GERALD | § | |
| KILPATRICK | § | |
| Defendants. | § | |

## DEFENDANTS' REQUEST FOR PRODUCTION TO YORK

TO:  THE YORK GROUP, INC., by and through their attorneys of record Jeffrey Parsons and Michael Scott of Byrne, Maynard, & Parsons, LLP, 1300 Post Oak Blvd., 25th Floor, Houston, Texas 70056

Defendants serve this Request for Production of Documents to Plaintiff The York Group, Inc., pursuant to the Federal Rules of Civil Procedure.

The York Group, Inc. is requested to produce all required and requested documents not later than thirty days from date of service on you.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & MARTIN, P.C.

By:  *Charles E Frost*

CHARLES E. FROST, JR.
Attorney-in-Charge
State Bar No. 07491025
Southern District ID No. 7214

OF COUNSEL:

CHAMBERLAIN, HRDLICKA, WHITE
    WILLIAMS & MARTIN
R. Kyle Hawes
State Bar No. 00796725
Southern District ID No. 23218
Kamy M. Schiffman
State Bar No. 24027842
Southern District ID No. 28360
1200 Smith Street, Suite 1400
Houston, TX 77002- 4310
(713) 658-1818
(713) 658-2553 (fax)

ATTORNEYS FOR DEFENDANTS HORIZON
CASKET GROUP, INC., DELTA CASKET
COMPANY, INC., DELTA-SOUTHERN CASKET
COMPANY, INC., DELTA CASKET ENTERPRISES, INC.,
WILLIAM W. GRUBBS, JR. AND GERALD KILPATRICK

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing has been served on counsel for all parties by U.S. first class mail, facsimile, <u>hand delivery</u>, and/or certified mail, on this _2d_ day of November, 2005 as follows:

    ***Via Hand Delivery***
    Jeffrey R. Parsons
    W. Michael Scott
    Bruce C. Morris
    David A. Walton
    BEIRNE, MAYNARD, & PARSONS, LLP
    1300 Post Oak Blvd., 25th Floor
    Houston, Texas 77056

                         Charles E. Frost, Jr.

0530909.01
005561-000000

2

# DEFINITIONS AND INSTRUCTIONS

**"York"** shall mean The York Group, Inc. and any employee, officer, agent, associate, affiliate, or other person acting on its behalf.

**"York's May 25, 2005 letter"** shall mean the letter sent by York to funeral home owners and others in Tennessee, Kentucky, Alabama, Georgia, Arkansas, Indiana, Illinois, Virginia, Mississippi and/or West Virginia, and perhaps other places, on or about May 25, 2005, concerning "Delta Casket Company" and "Delta".

**"You" "you" or "yours"** shall mean and refer to the Plaintiff York and its employees, agents, representatives, attorneys, or others acting on its behalf.

**"Horizon"** means the Defendant Horizon Casket Group, Inc.

**"Delta Casket Company"** means the Defendant Delta Casket Company, Inc.

**"Delta-Southern"** means the Defendant Delta-Southern Casket Company, Inc.

**"Delta Casket Enterprises"** means Defendant Delta Casket Enterprises, Inc.

**Delta Companies"** means Delta Casket Company, Delta Casket Enterprises, and Delta Southern.

**"Grubbs"** means Defendant William W. Grubbs, Jr.

**"Kilpatrick"** means Defendant Gerald Kilpatrick.

**"Reflect," "refer to," "relate to," and "concerning"** (or any form thereof) shall mean constituting, comprising, respecting, supporting, contradicting, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, or relevant to.

**"Chinese caskets"** means caskets manufactured in China and/or the Far East.

**"York Marks"** shall mean and refer to any alleged trademarks, trade names, servicemarks, copyrights, patents, brand names, labels symbols or other proprietary rights to which York alleges it has a right.

**"Document(s)"** means all written, typed, printed, and/or computer-stored matter, and all magnetic or other records or documentation of any kind or description, no matter how produced or reproduced, whether or not prepared by you, including without limitation letters, correspondence, telegrams, memoranda, notes, reports, records, envelopes, minutes, contracts, agreements, messages or notations of telephone or personal conversations or conferences, interoffice communications, diaries, calendars, work papers, mathematical computations, purchase orders, invoices, questionnaires and surveys, accounts, pamphlets, pictures, films, voice recordings, maps, charts, graphs, magazines, booklets, circulars, bulletins, notices, instructions,

handwritten notes, E-mail, data and information stored on computers, microfilm, bulletins, circulars, pamphlets, photographs, facsimiles, invoices, tape recordings, computer printouts, and work sheets, drafts of any of the foregoing, copies of any of the foregoing not identical to the originals, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature, in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, agents, consultants, accountants, and attorneys.

1.    All documents requested that are contained in computer programs, e-mail, and other electronic or magnetic data shall be produced by printing out on paper all of the data, material, and information therein. Computer programs, e-mail, and other electronic or magnetic data also shall be produced in its native computer readable format with an identification of its associated software application and computer system on CD-ROMs readable by PC computers. The data produced must contain an exact and complete image copy of the source hard drives, or other electronic or magnetic media or storage device containing the original data and include not only active files, but all deleted, erased or discarded copies, and prior versions or drafts of the data.

2.    The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

3.    If you do not produce a document because of a claim of privilege, set forth the privilege claimed, the facts upon which you rely to support the claim of privilege, and identify all documents for which such privilege is claimed.

4.    If a document is responsive to a request for production and is in your control, but is not in your possession or custody, identify the person with possession or custody.

5.    If any document was, but is no longer, in your possession or subject to your control, state what disposition was made of it, by whom, and the date or dates or approximately date or dates on which such disposition was made, and why.

6.    Without limitation of the term "control", a document is deemed to be in your control if you have the right to secure the document or a copy thereof from any other person or public or private entity having actual possession thereof.

7.    Unless otherwise stated in the individual request, the requests seek documents created on or after January 1, 2001.

## DOCUMENTS REQUESTED

Please produce true and correct copies of the following:

1.    All documents constituting, evidencing or listing the persons and/or companies to which York's May 25, 2005 letter was sent, including but not limited to all lists of addressees to whom the letter was sent.

2. All documents constituting, evidencing, concerning, and/or referring to any alleged agreements, including but not limited to oral agreements, between York and any of the Delta Companies at any time between January 1, 2002 and June 1, 2005.

3. All documents constituting, evidencing, concerning, and/or referring to any discounts in price allegedly given to any of the Delta Companies at any time between January 1, 2000 and June 1, 2005.

4. All documents constituting, evidencing, concerning, discussing, and/or referring to any information concerning any proposed, and/or actual, business relationship between any of the Delta Companies and/or their officers or shareholders, on the one hand, and Aurora Casket Company, Inc. on the other hand.

5. All documents constituting, evidencing, concerning, and/or relating to any alleged deceptive business practices allegedly used or engaged in by any of the Delta Companies.

6. All documents constituting, evidencing, concerning, and/or relating to any alleged misleading business practices allegedly used or engaged in by any of the Delta Companies.

7. All documents constituting, evidencing, concerning, and/or relating to any alleged misrepresentations of York-branded caskets by any of the Delta Companies.

8. All documents constituting, evidencing, concerning, or referring to any of the Delta Companies no longer carrying York-branded products.

9. *All* documents constituting, evidencing, concerning, and/or referring to an alleged decision by York Casket "to terminate our relationship with Delta as recited in York's May 25, 2005 letter.

10. *All* documents constituting, evidencing, concerning, and/or referring to consideration or analyzing by York Casket terminating our relationship with Delta" as recited in York's May 25, 2005 letter.

11. All documents constituting, evidencing, concerning, or referring to any and all trips to China made by any officer, employee, and/or representative of York (including but not limited to any such trip made by any officer, employee, or representative of York's parent company Matthews International) concerning any aspects of the casket-manufacturing business.

12. Any documents constituting, evidencing, concerning, relating, or referring to any Chinese manufacturer of caskets (including but not limited to (i) any documents or information sent by York to any Chinese casket manufacturer, (ii) any caskets York has purchased from any Chinese manufacturer of caskets, and (iii) any information provided to York by any of the Delta Companies and/or Horizon concerning any Chinese casket manufacturer and/or caskets made in China).

13.    All documents constituting, evidencing, concerning, or referring to any website(s) maintained by any of the Delta Companies and/or Horizon.

14.    All documents constituting, evidencing, concerning, and/or referring to caskets made in China being marketed and/or sold by any of the Delta Companies, Horizon, Royal Casket Co., Yorktowne Caskets, Inc., Melton Company, Inc. and/or Warfield-Rohr Casket Co., Inc.

15.    All documents constituting, evidencing, concerning, discussing, and/or referring to any of the Delta Companies acting in a *de facto* capacity as a York distributor.

16.    All documents constituting, evidencing any and all trademarks and/or copyright registrations owned by York.

17.    All documents constituting, evidencing York's alleged Copyrighted Materials.

18.    All documents constituting, evidencing (alleged) infringement of York Copyright Registrations and/or York Copyrighted Materials.

19.    All documents constituting, evidencing and/or concerning any of Defendants having used and/or modified York's Copyrighted Materials and/or having reproduced same to sell non-York caskets.

20.    All documents constituting, evidencing, concerning, and/or referring to the York Marks having acquired wide-spread recognition, distinction, and value in the casket industry.

21.    All documents constituting, evidencing, concerning, and/or referring to any of the Delta Companies allegedly using and/or displaying York's (alleged) copyrighted lithographs and/or photographs of York-branded caskets.

22.    All documents constituting, evidencing, concerning, and/or referring to any of the Defendants using York designs, trademarks, and/or other marks in connection with caskets that were not made by York.

23.    All documents constituting, evidencing, concerning, discussing, and/or referring to any communication (including but not limited to meetings, telephone conferences, correspondence, and emails) between York and any of Defendants during the past five years.

24.    All documents constituting, evidencing, concerning, or referring to any alleged "counterfeit caskets" imported by any of Defendants.

25.    All documents constituting, evidencing, concerning, and/or referring to York's use of any alleged "brand names", including but not limited to the name "Sterling."

26.    All documents constituting, evidencing, concerning, and/or referring to York's use of any alleged model names, including but not limited to the name "Sterling."

27.     All documents constituting, evidencing, concerning, and/or referring to any of Defendants using York's allegedly registered mark "Y."

28.     All documents identifying York's distributors at any time during the past five years.

29.     All statements of any kind from any person, including any former employee or any customer of any of Defendants.

30.     All documents constituting, evidencing, concerning, and/or referring to any confusion, mistake, or deception for consumers or potential consumers between York Caskets and any other caskets offered for sale by any of Defendants.

31.     The passports of Jerry Runnels and/or Jonathan Maurer of York reflecting any trips to any Pacific-rim country (including but not limited to China) during the past two years.

32.     All documents reflecting, concerning, relating to, and/or referring to your knowledge of and/or participation (including proposed participation) in any consideration and/or analysis of possible purchases of caskets from China by York and/or by any of Defendants from December 31, 2000 to the present.

33.     All documents that reflect, concern, relate, and/or refer to marketing, advertising, and/or promotion of Chinese caskets from December 31, 2000 to the present by any of Defendants.

34.     All documents reflecting, concerning, relating to, and/or referring to any communications You or anyone representing You have had with anyone concerning the purchase, sale, importation, shipment, manufacture, marketing, and/or design of any caskets made in China from December 31, 2000 to the present.

35.     All documents constituting or evidencing all purchases of handles from any third party to be used in the production by York of caskets at any time since January 1, 2003.

36.     All documents constituting, evidencing all purchases by York or any company affiliated with York of any caskets made in China or any other country in the Pacific Rim area at any time since January 1, 2003.

37.     All documents constituting, evidencing, concerning, relating to, and/or referring to the "reliable new network of distribution in your area" asserted in York's May 25, 2005 letter, including but not limited to any and all actions taken to organize and/or set up any such network.

38.     All documents constituting, evidencing, concerning, relating to, and/or referring to any communications with anyone employed by or at York concerning caskets manufactured in and/or imported from China.

39.    All documents constituting, evidencing, concerning, relating to, and/or referring to any communications between You and any third person concerning caskets manufactured in and/or imported from China.

40.    All documents constituting, evidencing, concerning, relating to, and/or referring to any alleged substitution by any person or company of caskets manufactured in and/or imported from China in place of York caskets in fulfilling orders of casket purchasers.

41.    All documents that evidence, concern, relate, and/or refer to websites that you have created, owned, operated, or utilized concerning York products.

42.    All documents that evidence, concern, reflect, relate, and/or refer to your cost for each model of York casket produced since December 31, 2001.

43.    All documents that evidence, concern, reflect, relate, and/or refer to your sales volumes and/or prices for each model of York casket produced since December 31, 2001 in the Region in which the Delta Companies have generally sold products over the past five years (said region includes Tennessee, Kentucky, Mississippi, Alabama, North Georgia, Eastern Arkansas, Southern Illinois, Southern Indiana, Southwestern Virginia, and Southeastern Missouri.

44.    All documents that evidence, concern, reflect, relate, and/or refer to your profits for each model of York casket produced since December 31, 2001 sold in the Region in which the Delta Companies have sold products over the past five years.

45.    All documents that evidence, concern, reflect, relate, and/or refer to the article that appeared in the June, 2005, _Alliance_ trade magazine concerning York's purported termination of Delta.

46.    All documents that evidence, concern, reflect, relate, and/or refer to the article that appeared in the September, 2005, _Mortuary Management_ trade magazine concerning York's purported termination of Delta.

47.    All documents constituting, evidencing, concerning, or relating to sales by York to other companies in the Region in which the Delta Companies have generally sold over the past five years (said Region includes Tennessee, Kentucky, Mississippi, Alabama, and parts of Arkansas, Missouri, Virginia, Georgia, Indiana, and Illinois), including but not limited to a company with the principle name of Trinity.

48.    All purchase orders, invoices, order acknowledgements, invoices, and other similar documents between any of the Delta Companies and York .

49.    All documents constituting, evidencing, concerning, relating to, or referring to any communications with any funeral home customers in the Region in which any of the Delta Companies have sold products in the past five years (including Tennessee, Kentucky, Alabama, Mississippi, North Georgia, Eastern Arkansas, Southeastern Missouri, Southern Illinois, Southern Indiana, and Southwest Virginia).

50.  All documents constituting, evidencing, concerning, relating, or referring to items and things recently taken by York employees, officers, and/or representatives from customers of Delta Enterprises.

51.  All documents constituting a cease-and-desist letter from York to any of the Defendants.

52.  All documents constituting, evidencing, concerning, relating, or referring to any communications by any York employees or officers in April or May regarding any information that anyone associated with or employed by Delta Casket Company or Delta Casket Enterprises was negotiating with Aurora Casket Company to purchase Aurora caskets.

53.  All documents constituting, evidencing, concerning, relating, or referring to any communications by any York employees or officers in April or May regarding any information that anyone associated with or employed by Delta Casket Company or Delta Casket Enterprises was negotiating with Aurora Casket Company to do business with Delta Casket Company or Delta Casket Enterprises.