**YORK'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **THE YORK GROUP, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C. A. NO. 05-2181** |
| | § | |
| **HORIZON CASKET GROUP, INC.,** | § | |
| **DELTA CASKET COMPANY, INC.,** | § | |
| **DELTA-SOUTHERN CASKET** | § | |
| **COMPANY, INC., DELTA CASKET** | § | |
| **ENTERPRISES, INC., WILLIAM W.** | § | |
| **GRUBBS, JR. AND GERALD** | § | |
| **KILPATRICK** | § | |
| **Defendants.** | § | |
| | § | |

## <u>DEFENDANTS' SECOND REQUEST FOR PRODUCTION TO YORK</u>

TO:    THE YORK GROUP, INC., by and through their attorneys of record Jeffrey Parsons and Michael Scott of Byrne, Maynard, & Parsons, LLP, 1300 Post Oak Blvd., 25th Floor, Houston, Texas 70056

       Defendants serve this Second Request for Production of Documents to Plaintiff The York Group, Inc., pursuant to the Federal Rules of Civil Procedure.

       The York Group, Inc. is requested to produce all required and requested documents not later than thirty days from date of service on you.

       Respectfully submitted,

       CHAMBERLAIN, HRDLICKA, WHITE,
          WILLIAMS & MARTIN, P.C.

By:         _____

       CHARLES E. FROST, JR.
       Attorney-in-Charge
       State Bar No. 07491025
       Southern District ID No. 7214

OF COUNSEL:

CHAMBERLAIN, HRDLICKA, WHITE
      WILLIAMS & MARTIN
R. Kyle Hawes
State Bar No. 00796725
Southern District ID No. 23218
Kamy M. Schiffman
State Bar No. 24027842
Southern District ID No. 28360
1200 Smith Street, Suite 1400
Houston, TX 77002- 4310
(713) 658-1818
(713) 658-2553 (fax)

ATTORNEYS FOR DEFENDANTS HORIZON
CASKET GROUP, INC., DELTA CASKET
COMPANY, INC., DELTA-SOUTHERN CASKET
COMPANY, INC., DELTA CASKET ENTERPRISES, INC.,
WILLIAM W. GRUBBS, JR. AND GERALD KILPATRICK

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing has been served on counsel for all parties by U.S. first class mail, facsimile, <u>hand delivery</u>, and/or certified mail, on this _28_ day of February, 2006 as follows:

    ***Via Hand Delivery***
    Jeffrey R. Parsons
    W. Michael Scott
    Bruce C. Morris
    David A. Walton
    BEIRNE, MAYNARD, & PARSONS, LLP
    1300 Post Oak Blvd., 25th Floor
    Houston, Texas 77056

                                  Charles E. Frost, Jr.

0562309.01
005561-000000:2/24/2006

2

# DEFINITIONS AND INSTRUCTIONS

**"York"** shall mean The York Group, Inc. and any employee, officer, agent, associate, affiliate, or other person acting on its behalf.

**"York's May 25, 2005 letter"** shall mean the letter sent by York to funeral home owners and others in Tennessee, Kentucky, Alabama, Georgia, Arkansas, Indiana, Illinois, Virginia, Mississippi and/or West Virginia, and perhaps other places, on or about May 25, 2005, concerning "Delta Casket Company" and "Delta".

**"You" "you" or "yours"** shall mean and refer to the Plaintiff York and its employees, agents, representatives, attorneys, or others acting on its behalf.

**"Horizon"** means the Defendant Horizon Casket Group, Inc.

**"Delta Casket Company"** means the Defendant Delta Casket Company, Inc.

**"Delta-Southern"** means the Defendant Delta-Southern Casket Company, Inc.

**"Delta Casket Enterprises"** means Defendant Delta Casket Enterprises, Inc.

**Delta Companies"** means Delta Casket Company, Delta Casket Enterprises, and Delta Southern.

**"Grubbs"** means Defendant William W. Grubbs, Jr.

**"Kilpatrick"** means Defendant Gerald Kilpatrick.

**"Reflect," "refer to," "relate to," and "concerning"** (or any form thereof) shall mean constituting, comprising, respecting, supporting, contradicting, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, or relevant to.

**"Chinese caskets"** means caskets manufactured in China and/or the Far East.

**"York Marks"** shall mean and refer to any alleged trademarks, trade names, servicemarks, copyrights, patents, brand names, labels symbols or other proprietary rights to which York alleges it has a right.

**"Document(s)"** means all written, typed, printed, and/or computer-stored matter, and all magnetic or other records or documentation of any kind or description, no matter how produced or reproduced, whether or not prepared by you, including without limitation letters, correspondence, telegrams, memoranda, notes, reports, records, envelopes, minutes, contracts, agreements, messages or notations of telephone or personal conversations or conferences, interoffice communications, diaries, calendars, work papers, mathematical computations, purchase orders, invoices, questionnaires and surveys, accounts, pamphlets, pictures, films, voice recordings, maps, charts, graphs, magazines, booklets, circulars, bulletins, notices, instructions,

handwritten notes, E-mail, data and information stored on computers, microfilm, bulletins, circulars, pamphlets, photographs, facsimiles, invoices, tape recordings, computer printouts, and work sheets, drafts of any of the foregoing, copies of any of the foregoing not identical to the originals, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature, in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, agents, consultants, accountants, and attorneys.

1.    All documents requested that are contained in computer programs, e-mail, and other electronic or magnetic data shall be produced by printing out on paper all of the data, material, and information therein. Computer programs, e-mail, and other electronic or magnetic data also shall be produced in its native computer readable format with an identification of its associated software application and computer system on CD-ROMs readable by PC computers. The data produced must contain an exact and complete image copy of the source hard drives, or other electronic or magnetic media or storage device containing the original data and include not only active files, but all deleted, erased or discarded copies, and prior versions or drafts of the data.

2.    The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

3.    If you do not produce a document because of a claim of privilege, set forth the privilege claimed, the facts upon which you rely to support the claim of privilege, and identify all documents for which such privilege is claimed.

4.    If a document is responsive to a request for production and is in your control, but is not in your possession or custody, identify the person with possession or custody.

5.    If any document was, but is no longer, in your possession or subject to your control, state what disposition was made of it, by whom, and the date or dates or approximately date or dates on which such disposition was made, and why.

6.    Without limitation of the term "control", a document is deemed to be in your control if you have the right to secure the document or a copy thereof from any other person or public or private entity having actual possession thereof.

## DOCUMENTS REQUESTED

Please produce true and correct copies of the following:

1.    All documents evidencing, concerning, showing, or tending to show that York has trade dress that has meaning in the market place.

2.    All documents concerning or relating to any York models of caskets that York copied and/or were inspired by other manufacturer's caskets.

3.    All documents evidencing, constituting, concerning and/or relating to York's purchase of assets of and/or settlement with Royal Casket, including all documents showing the total amount paid, all drafts of documents, all documents showing payments by either side, and all drafts of documents circulated between the parties.

4.    All copies of all passports concerning Joseph Bartolacci and David DeCarlo, and any other employee, agent or representative who went to China for any purpose in 2004 or 2005.

5.    All documents obtained from any person or entity pursuant to a subpoena or other court process in this case or any related case.

6.    All documents constituting, evidencing, concerning, or regarding any communication or negotiations with Service Corporation International that mention, refer or relate Horizon caskets or the Chinese caskets.

7.    All documents constituting, evidencing, concerning, relating, or referring to ay confusion or mistake on the part of any funeral home, casket distributor, or ultimate customer with respect to any casket sold by York-Southern, Royal Casket Company, Yorktowne Casket Company, Warfield-Rohr Casket Company, or Melton Company.

To the extent York has not responded to and/or produced the following documents, Defendants requests the following documents be produced:

8.    The passports of Sandra Matson and Dennis Fish reflecting any trips to any Pacific-rim country (including but not limited to China) during the past three years.

9.    All documents constituting, evidencing, concerning, relating, or referring to any applications for trademarks and/or service marks filed on behalf of York with the United States Patent and Trademark Office.

10.    All documents constituting, evidencing, concerning, relating, or referring to any communication between the United States Patent and Trademark Office and York regarding any applications for trademarks and/or service marks filed on behalf of York, including but not limited to all office actions.

11.    All documents constituting, evidencing, concerning, and/or referring to the use or regarding Chinese-made and/or Horizon caskets of any casket names that York claims were first used by York prior to being used on an Horizon casket.

12.    All documents constituting, evidencing, concerning, relating, or referring to any quality alerts concerning York caskets.

13.    All documents constituting, evidencing, concerning, relating, or referring to any problems with York caskets.

14.    All documents constituting, evidencing, concerning, relating, or referring to any bottoms falling out of York caskets.

15.    All documents constituting, evidencing, concerning, relating, or referring to any problems, complaints, and/or irregularities of handles of York caskets.

16.    All documents constituting, evidencing, concerning, relating, or referring to any problems, complaints, and/or irregularities of York casket fabric.

17.    All documents constituting, evidencing, concerning, relating, or referring to any problems, complaints, and/or irregularities of York casket interiors.

18.    All documents constituting, evidencing, concerning, relating, or referring to any problems, complaints, and/or irregularities of the beds in York caskets.

19.    All documents constituting, evidencing, concerning, relating, or referring to any problems, complaints, and/or irregularities of the paint on York caskets.

20.    All documents constituting, evidencing, concerning, relating, or referring to any problems, complaints, and/or irregularities of the lids on York caskets.

21.    All documents constituting, evidencing, concerning, relating, or referring to any any problems, complaints, and/or irregularities of the paint on York caskets.

22.    All documents constituting, evidencing, concerning, relating, or referring to any any malfunction relating to York caskets.

23.    All documents constituting, evidencing, concerning, relating, or referring to any any customer complaints regarding York caskets.

24.    All documents constituting, evidencing, concerning, relating, or referring to any quality alerts regarding any functional or aesthetic aspect of any York caskets.

25.    All documents and correspondence constituting, evidencing, concerning, relating, or referring to the termination of the 1999 Distributorship Agreement.

26.    All documents constituting, evidencing, concerning, relating, or referring to any confusion or mistake on the part of any funeral home, casket distributor, or ultimate consumer with respect to any casket sold by any of the Delta Companies or DELTAurora.

27.    All documents constituting, evidencing, concerning, relating, or referring to any confusion between York caskets and caskets manufactured by any other entity(s).

28.    All documents constituting, evidencing, concerning, relating, or referring to any complaints to York about Chinese caskets or Horizon caskets.

29.     Documents sufficient to show all of the casket names used by York.

30.     Documents sufficient to show all of the casket model numbers used by York.

31.     Documents sufficient to show the names of all colors of caskets offered by York.

32.     All documents comparing York caskets to any caskets manufactured by any other person or entity.

33.     All documents constituting, evidencing, concerning, relating, or referring to the Wuxi Tractor Company or the Wuxi Taihu Tractor Company.

34.     All documents constituting, evidencing, concerning, relating, or referring to Shanghai San Xiang Metal Products Company, Ltd. or Shanghai Tops.

35.     All documents constituting, evidencing, concerning, relating, or referring to any agreements, whether oral or written, between York and Delta entered into or in effect after the termination of the 1999 Distributorship Agreement.

36.     All documents constituting, evidencing, concerning, relating, or referring to any requirements, targets, or goals for sales of York caskets by any of the Delta Companies.

37.     All distributorship agreements with Warfield-Rohr Casket Company.

38.     All communications with Warfield-Rohr Casket Company about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement.

39.     All distributorship agreements with York Southern.

40.     All communications with York Southern about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement.

41.     All distributorship agreements with Yorktowne Casket Company.

42.     All communications with Yorktowne Casket Company about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement.

43.     All distributorship agreements with Royal Casket Company (also known as York Southwest).

44.     All communications with Royal Casket Company (also known as York Southwest) about the termination, renewal, breach, proposal, or negotiation of any distributorship agreement.

45.     All documents constituting, evidencing, concerning, relating, or referring to any Chinese caskets imported, purchased, designed, or sold by Horizon or Delta Casket Company, Delta Casket Enterprises, Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company.

46.     All documents evidencing, concerning, relating, or referring to any communications with, to, or from any of Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company concerning or referring to any Chinese caskets.

47.     All documents evidencing, concerning, relating, or referring to any meeting or conversation between York and any of Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company regarding Horizon or Chinese caskets.

48.     All documents evidencing, concerning, relating, or referring to any communications concerning or referring to any Horizon casket with, to, or from any of Yorktowne Casket Company, Royal Casket Company, York-Southwest, York-Southern, and/or Warfield-Rohr Casket Company

49.     All communications with, to, or from any of Yorktowne Casket Company, York-Southern, York-Southwest, Royal Casket Company, and/or Warfield Rohr Casket Company concerning, relating, or referring to Delta Casket Enterprises, Delta Casket company, or DELTAurora.

50.     York's quarterly and annual financial statements and balance sheets for the period 2002 to the present.

51.     Matthews International Corporation's annual reports for the period 2002 to the present.

52.     For the period 2002 to the present, produce documents sufficient to show the number of caskets sold by York and the per-casket and overall revenue, gross profit, and net profit associated with those caskets.

53.     All documents constituting, evidencing, concerning, relating, or referring to the sale of Delta Casket Company's assets to Delta Casket Enterprises.

54.     All documents constituting, evidencing, concerning, relating, or referring to the corporate structure or organization of the Delta Companies.

55.     All documents produced or received in connection with litigation concerning Yorktowne Caskets, Inc. between York and Hillenbrand Industries, Inc. or Batesville Casket Company, Inc. that relate to Chinese caskets or Horizon.

56.     All sales reports, sales forecasts, or sales call reports relating to Kentucky, Tennessee, Alabama, and/or Mississippi.

57.     All documents relating to the establishment of York distribution centers in Kentucky, Tennessee, Alabama, and/or Mississippi.

58.     All lists of customers located in Kentucky, Tennessee, Alabama, and/or Mississippi.

59.    All documents reflecting sales, revenues, profits, or costs for casket sales in Kentucky, Tennessee, Alabama, and/or Mississippi.

60.    All documents reflecting or referring to sales of caskets by York to funeral homes in Kentucky, Tennessee, Alabama, and/or Mississippi. since May of 2005.

61.    All business plans for casket sales in Kentucky, Tennessee, Alabama, and/or Mississippi.

62.    All business plans referring to Newmark Group or the York Distributors Association.

63.    All documents constituting, evidencing, concerning, relating, or referring to Jamestown Casket, Heritage Casket Group, Jack Whitmore, or Bob Drake.

64.    All documents constituting, evidencing, concerning, relating, or referring to Jonathan Maurer's attendance at a York Distributors Association meeting in Key West, Florida.

65.    All calendars, day-timers or similar type of record, kept by or for Joseph Bartolacci.

66.    All calendars, day-timers or similar type of record, kept by or for Jerry Runnels.

67.    All calendars, day-timer or similar type of record, kept by or for Jonathan Maurer.

68.    All calendars, day-timer or similar type of record, kept by or for Sandra Matson.

69.    All calendars, day-timer or similar type of record, kept by or for Dennis Fish.

70.    All organizational charts reflecting the officers of Matthews International and/or York.

71.    All organizational charts reflecting the sales, marketing, product development, research, or finance personnel of York.

0562309.01
005561-000000