IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAWALJEET K. TAGORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| THE UNITED STATES OF AMERICA, | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY; FEDERAL | § | |
| PROTECTIVE SERVICE; UNITED | § | |
| STATES DEPARTMENT OF THE | § | |
| TREASURY; INTERNAL REVENUE | § | CIVIL ACTION NO. H-09-0027 |
| SERVICE; JANET NAPOLITANO, | § | |
| Secretary of the United States | § | |
| Department of Homeland | § | |
| Security; TIMOTHY F. GEITHNER, | § | |
| Secretary of the Treasury; | § | |
| WILLIAM A. CARMONDY, III; | § | |
| DAVID HIEBERT; CHRISTINA | § | |
| NAVARETE-WASSON; SERGIO | § | |
| ARELLANO; JAMES K. ELLIS; | § | |
| NIEVES NARVAEZ; and DOES 1-25, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Kawaljeet K. Tagore, brings this action against her

former employer, the United States Department of Treasury and the

Internal Revenue Service (IRS), as well as the United States

Department of Homeland Security (DHS), the Federal Protective

Service (FPS), and a number of individuals, including, Timothy F.

Geithner, Secretary of the Treasury, Janet Napolitano, Secretary of

the DHS,[1] William A. Carmody, III, David Hiebert, Christina

_____

[1]Although plaintiff's Complaint (Docket Entry No. 1) names
Michael Chertoff as Secretary of DHS and Henry M. Paulson, Jr. as
Secretary of the Treasury, these positions are now held,
respectively, by Janet Napolitano and Timothy F. Geithner.

Navarete-Wasson, Sergio Arellano, James K. Ellis, Nieves Narvaez, and Does 1-25. Plaintiff alleges that she was subjected to religious discrimination and denied the freedom to practice her religion when the defendants refused to allow her to wear a <u>kirpan</u> — a ceremonial sword — into the federal building in which she worked. Plaintiff asserts (1) a claim for violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, <u>et seq.</u>, against all of the defendants, and (2) a claim for violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 (Title VII), 42 U.S.C. § 2000e, <u>et seq.</u>, against the IRS and Treasury Department defendants.[2] Pending before the court is Federal Defendants' Partial Motion to Dismiss (Docket Entry No. 16). For the reasons explained below, the defendants' motion will be granted.

## I.  <u>Factual and Procedural Background</u>

The facts underlying the plaintiff's claims are not in dispute. In July of 2004 plaintiff began working as an agent for the IRS, a bureau of the United States Department of the Treasury, in the Mickey Leland Federal Building in Houston, Texas. On April 14, 2005, plaintiff underwent an <u>Amrit Sanskar</u> ceremony pursuant to which she was formally initiated into the Sikh faith. Following the <u>Amrit Sanskar</u> ceremony, plaintiff began wearing a <u>kirpan</u> an article of faith worn by adherents of the Sikh faith.

---

[2]See Complaint, Docket Entry No. 1.

Plaintiff alleges that on April 18, 2005, her supervisor at the IRS, Nieves Narvaez, expressed concern about her carrying a kirpan in the workplace. Plaintiff alleges that the following day Narvaez asked plaintiff for written information about the kirpan, and that as a result of her discussions with him plaintiff started carrying a shorter kirpan to work, i.e., a kirpan that was approximately six inches long with an edge of about three inches. Plaintiff alleges that the kirpan she wears is not sharp or capable of inflicting bodily injury. Plaintiff alleges that on April 30, 2005, she provided the IRS with written information about the kirpan, and she requested that she be provided an accommodation allowing her to carry the kirpan in the workplace. Approximately the same day, Narvaez told plaintiff to leave the workplace because carrying her kirpan there violated agency rules of conduct and federal law, specifically, 18 U.S.C. § 930, which prohibits the possession of a dangerous weapon in a federal facility. Subsequently, plaintiff worked from home on flexi-place leave for approximately nine months.[3]

On January 20, 2006, Sergio E. Arellano, IRS Director of Field Operations, directed plaintiff to modify her kirpan and report to work at the Leland Building by January 30, 2006. On January 30, 2006, plaintiff reported to work wearing her unmodified kirpan. When plaintiff told FPS officers that she was wearing her kirpan,

_____

[3] Id. ¶¶ 25-51.

-3-

they barred her from entering the building. The IRS charged her with being Absent Without Leave, removed her from flexi-place leave, and stopped paying her salary.[4]

On or about March 26, 2006, plaintiff went to the Leland Building at her supervisor's direction to return files. She entered the building and passed through FPS security while carrying her kirpan, but the IRS sent her home upon learning that she was carrying her kirpan.[5] On or about July 11, 2006, the IRS terminated plaintiff's employment.[6]

## II.  Defendants' Motion for Partial Dismissal

Plaintiff alleges that by terminating her employment on or about July 11, 2006, for refusing either to modify her kirpan to satisfy the requirements of 18 U.S.C. § 930(g)(2) or to stop wearing her kirpan in the workplace, defendants have violated both Title VII and RFRA. Defendants move to dismiss the RFRA claim that plaintiff has asserted against the IRS defendants, including the Department of Treasury and its employees, and any claims that plaintiff has asserted against the individual defendants, except Treasury Secretary Timothy F. Geithner, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Defendants also move to dismiss any claim

---

[4]Id. ¶¶ 55-56.

[5]Id. ¶ 57.

[6]Id. ¶ 59.

that plaintiff has alleged or attempted to allege for retaliation under Title VII pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies.

In response to defendants' motion, plaintiff states that she "has not brought a separate Title VII retaliation claim,"[7] and "has no objection to the dismissal of the individual defendants in their personal capacities . . . [, but that] she continues to maintain her claims against the individual defendants in their official capacities."[8] Accordingly, any claims that plaintiff has alleged or attempted to allege against the individual defendants in their personal capacities will be dismissed, and any claim that plaintiff has alleged or attempted to allege against the remaining defendants for retaliation in violation of Title VII will also be dismissed. Therefore, the issues for the court to consider are whether the RFRA claims that plaintiff has asserted against the IRS and Treasury Department defendants in their official capacities are subject to dismissal for failure to state a claim for which relief may be granted.

## A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be

---

[7]Plaintiff's Opposition to Motion for Partial Dismissal, Docket Entry No. 20, pp. 21-22.

[8]Id. at 22.

granted. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007). A Rule 12(b)(6) motion to dismiss requires the court to accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

<u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 997 (2002) (quoting <u>Scheuer v. Rhodes</u>, 94 S.Ct. 1683, 1686 (1974)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S.Ct. at 1974. In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the contents of the pleadings, with limited exceptions not applicable in the instant action.

**B.   Analysis**

Citing <u>Brown v. General Services Administration</u>, 96 S.Ct. 1961 (1976), the IRS and Treasury Department defendants argue that they are entitled to dismissal of the RFRA claims that plaintiff has asserted against them because Title VII provides the exclusive remedy for employment discrimination claims alleged by federal employees. Plaintiff acknowledges that Title VII provides the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," <u>Brown</u>, 96 S.Ct. at

-6-

1966, but argues that the RFRA claims she has alleged are not preempted because preemption "contradicts the plain and unambiguous meaning of the statutory text,"[9] and because RFRA "protects a different set of federally created rights."[10]

1. <u>Applicable Law</u>

Plaintiff argues that defendants' reliance on <u>Brown</u> is misplaced because "RFRA's statutory text clearly authorizes a cause of action against federal agencies and officials for burdens on religious exercise, and it includes no exception when the plaintiff happens to be a federal employee."[11]

(a) Title VII

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). Congress enacted Title VII to make it unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." <u>Trans World Airlines, Inc. v. Hardison</u>, 97

---

[9] Plaintiff's Opposition to Motion for Partial Dismissal, Docket Entry No. 20, pp. 9-10.

[10] <u>Id.</u> at 10.

[11] <u>Id.</u>

S.Ct. 2264, 2271-72 (1977).  Title VII's protections extend to
federal employees.  <u>See</u> 42 U.S.C. § 2000e-16(a) ("All personnel
actions affecting employees or applicants for employment" in
military departments, executive agencies, and several specified
governmental entities "shall be made free from any discrimination
based on race, color, religion, sex or national origin.").  Federal
employees complaining of employment discrimination are subject to
Title VII's rigorous administrative exhaustion requirements.  <u>See</u>
<u>Brown</u>, 96 S.Ct. at 1968.  <u>See also</u> <u>Hampton v. I.R.S.</u>, 913 F.2d 180,
182 (5th Cir. 1990) (explaining that before a federal employee may
bring an employment discrimination suit in federal court, he or she
must first exhaust available administrative remedies).

(b)  Religious Freedom Restoration Act

RFRA provides that the government "shall not substantially
burden a person's exercise of religion even if the burden results
from a rule of general applicability, except as provided in
subsection (b) of this section."  42 U.S.C. § 2000bb-1(a).
Subsection (b) provides an exception pursuant to which the
government may substantially burden a person's exercise of religion
if (1) it furthers a compelling governmental interest; and (2) it
is the least restrictive means of furthering that compelling
governmental interest.  42 U.S.C. § 2000bb1-(b)(1) and (2).

Congress passed RFRA in 1993 to legislatively overrule the
Supreme Court's holding in <u>Employment Division, Department of Human</u>

-8-

<u>Resources of Oregon v. Smith</u>, 110 S.Ct. 1595 (1990), that neutral laws of general applicability that burden religious exercise do not violate the First Amendment. Congress explained that RFRA was passed for the purpose of restoring:

> [t]he compelling interest test as set forth in <u>Sherbert v. Verner</u>, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and to guarantee its application in all cases where the free exercise of religion is substantially burdened; and to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

42 U.S.C. § 2000bb(b). RFRA provides a claim or defense in a judicial proceeding to a person whose religious exercise has been burdened by the government. 42 U.S.C. § 2000bb-1(c).

(c) <u>Brown</u> and Its Progeny

Defendants' argument that plaintiff's RFRA claim is preempted by the claims that plaintiff has asserted against them under Title VII is based on the Supreme Court's holding in <u>Brown</u>, 96 S.Ct. at 1961, that Title VII provides the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." <u>Id.</u> at 1966. While <u>Brown</u> was decided in 1976, roughly seventeen years before the passage of the RFRA, the only circuit court of appeals to have addressed the issue now before the court regarding Title VII's preemptive effect on RFRA claims has followed <u>Brown</u> and held that Title VII is the only remedy available for an employment discrimination claim asserted by

a federal employee based on the government's failure to accommodate a religious practice such as that at issue in the instant case. See Francis v. Mineta, 505 F.3d 266, 271 (3d Cir. 2007) (citing Brown, 96 S.Ct. at 1961) ("Title VII thus sweeps within its reach all claims of employment discrimination whether they are based on religion or another enumerated form of discrimination.")).

In Francis the Third Circuit held that a plaintiff who claimed that he had been discharged because of his religious observance (i.e., his failure to remove dreadlocks in accordance with a mandatory federal grooming policy) could not proceed with an action under RFRA because Title VII provided similar protection against discrimination on the basis of religious observance. Francis, 505 F.3d at 267-272. In so holding, the Third Circuit placed specific reliance on RFRA's legislative history. The Third Circuit observed that

> RFRA applies to "all Federal law" and the implementation of that law, "whether statutory or otherwise," adopted both before and after the passage of RFRA. 42 U.S.C. § 2000bb-3(a). Despite the apparent limitless scope of RFRA, Congress was careful to circumscribe its reach. Accordingly, in a section captioned "Other Areas of Law are Unaffected," the Senate Report on RFRA states: "[a]lthough the purpose of this act is only to overturn the Supreme Court's decision in Smith, concerns have been raised that the act could have unintended consequences and unsettle other areas of law." S. Rep. No. 103-111, at 12 (1993), as reprinted in 1993 U.S.C.C.A.N. 1879, 1902. The Report then discusses a number of areas that are not affected by RFRA, including Title VII. It explains: "[n]othing in this act shall be construed as affecting religious accommodation under Title VII of the Civil Rights Act of 1964." Id. at 13, as reprinted in 1993 U.S.C.C.A.N. at 1903. The House Report on RFRA

> contains nearly identical language. <u>See</u> H.R.Rep.
> No. 103-88, at 9 (1993).

> It is not surprising that nothing in RFRA alters the
> exclusive nature of Title VII with regard to employees'
> claims of religion-based employment discrimination.
> Nothing in pre-<u>Smith</u> case law permitted an employee
> alleging employment discrimination based on religion to
> bypass Title VII's exclusive and comprehensive scheme.
> Accordingly, since RFRA was only enacted to overturn
> <u>Smith</u> and restore pre-<u>Smith</u> case law, the Senate Report
> merely clarifies that Congress did not intend RFRA to
> subsume other statutory schemes.

<u>Francis</u>, 505 F.3d at 270.

The <u>Francis</u> court also relied on the definition of "religion"
codified in Title VII at 42 U.S.C. § 2000e(j) to support its
holding that the plaintiff's RFRA claim was preempted by Title VII.
Under Title VII

> [t]he term "religion" includes all aspects of religious
> observance and practice, as well as belief, unless an
> employer demonstrates that he is unable to reasonably
> accommodate to an employee's or prospective employee's
> religious observance or practice without undue hardship
> on the conduct of the employer's business.

42 U.S.C. § 2000e(j). The Third Circuit reasoned that since
Title VII's prohibition on religion-based discrimination
incorporated the language of this definition, thereby prohibiting
discrimination against those who engage in "religious observance
and practice," Title VII preempted any remedy otherwise available
to the plaintiff under the RFRA. <u>Francis</u>, 505 F.3d at 271.

Observing that the RFRA claim at issue in <u>Francis</u> was based on
an allegation of the same form of discrimination prohibited by
Title VII, the Third Circuit concluded that the RFRA claim was

-11-

preempted by Title VII and could not proceed because of the plaintiff's failure to exhaust his administrative remedies. Id. at 272. Plaintiff urges this court not to follow Francis because the Third Circuit improperly resorted to legislative history to interpret a clear statute. Plaintiff argues that Francis violates a fundamental tenet of statutory interpretation, i.e., that there is no need to look to legislative history when a statute clearly and unambiguously provides for claims to be brought against federal agencies.[12]

(d)  Court's Ability to Rely on Legislative History

The Supreme Court allows courts to look at legislative history even if the plain meaning of a statute is clear, in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." United States v. Ron Pair Enterprises, Inc., 109 S.Ct. 1026, 1031 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 102 S.Ct. 3245, 3250 (1982)).  "In such cases, the intention of the drafters, rather than the strict language, controls." Id. Since acceptance of plaintiff's argument would mean that federal employees could circumvent Title VII's rigorous exhaustion requirements merely by asserting a claim under the RFRA instead of under Title VII, and since the Senate Report on RFRA clearly states Congress' intent

---

[12]Id. at 11-15.

-12-

that RFRA was not to affect the exhaustion requirement in Title VII's administrative remedies, the legislative history on which the Third Circuit relied in <u>Francis</u> leaves little doubt that RFRA's passage was not intended to disturb Title VII's remedial administrative scheme. <u>See</u> <u>Francis</u>, 505 F.3d at 270-272 (citing S.Rep. No. 103-111). Therefore, the court is not persuaded either that it is precluded from considering RFRA's legislative history, or that RFRA's plain text necessarily provides federal employees seeking an accommodation for a religious practice a cause of action independent from Title VII.

2.    <u>Application of the Law to the Facts</u>

Asserting that "RFRA is not a non-discrimination statute,"[13] plaintiff argues that the RFRA claim she has alleged against the defendants is not preempted because "RFRA claims do not implicate <u>Brown</u>'s anti-discrimination rationale."[14]    In support of this argument plaintiff asserts that "RFRA does not punish discrimina-tory intent or treatment — it alleviates government-created burdens on religious exercise,"[15] and that RFRA claims, by their nature, are based on different facts than Title VII claims."[16]

---

[13]<u>Id.</u> at 16.

[14]<u>Id.</u>

[15]<u>Id.</u> at 17.

[16]<u>Id.</u> at 19.

(a)  Substantial Burden vs. Discrimination

In support of her argument that the RFRA claims asserted against the IRS and Treasury Department defendants are not preempted because RFRA claims do not implicate Brown's anti-discrimination rationale, plaintiff asserts that "RFRA sets a different standard for federal employers, a higher bar than even disparate impact claims under Title VII."[17]  Plaintiff explains that

> RFRA, by its nature, is not a federal employment discrimination claim of the type prohibited by Brown. . . It is a separate and independent claim, based upon the nature of the burden on a plaintiff's religious exercise, rather than the existence of discrimination or the treatment of one faith vis-a-vis another.[18]

The problem with plaintiff's argument is that (1) she fails to demonstrate how, under the facts alleged in her complaint, her freedom to exercise her religious beliefs protected by RFRA differs from her right to be free from religious discrimination in the workplace protected by Title VII, and (2) she fails to cite any case in which a federal court has held that the RFRA imposes a different, higher standard on federal employers than the standard established by Title VII.  Plaintiff also fails to demonstrate that her argument is not precluded by the Fifth Circuit's reading of Brown to mean that "when the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim."  Pfau v. Reed, 125

---

[17]Id. at 19-20.

[18]Id. at 20.

F.3d 927, 933 (5th Cir. 1997), <u>vacated on other grounds</u>, 119 S.Ct. 32 (1998), <u>pertinent holding reinstated</u>, 167 F.3d 228, 229 (5th Cir. 1999).[19]

### (1)  Same Right Allegedly Violated

Plaintiff's contention that her RFRA claim against the IRS is not preempted by Title VII because it is cognizable under a separate statute lacks merit.  In <u>Brown</u> the Supreme Court observed that "a precisely drawn, detailed statute pre-empts more general remedies."  <u>Brown</u>, 96 S.Ct. at 1968.  Because Title VII is a precisely drawn, detailed statutory scheme for the enforcement of protected rights in the workplace, and because the substantial burden that plaintiff claims violates RFRA is also the discriminatory conduct that she claims violates Title VII, <u>i.e.</u>, the inability to carry her kirpan in the workplace, plaintiff may not seek relief for the violation of religious rights protected by Title VII through the more general remedy afforded by RFRA.  <u>See Radzanower v. Touche Ross & Co.</u>, 96 S.Ct. 1989, 1992 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.").  A

---

[19]The Supreme Court granted certiorari in <u>Pfau</u>, vacated the judgment, and remanded "for further consideration in light of" two recently decided Supreme Court cases.  <u>Pfau v. Reed</u>, 119 S.Ct. 32 (1998).  On remand the Fifth Circuit "reinstate[d]" that part of its opinion cited here.  <u>Pfau v. Reed</u>, 167 F.3d 228, 229 (5th Cir.), <u>cert. denied</u>, 120 S.Ct. 49 (1999).

plain reading of plaintiff's complaint reveals that her RFRA claims are based on the same allegations of discrimination upon which her Title VII claims are based, and that the conduct for which she seeks relief is the failure of her employer to accommodate her request to carry a kirpan in the workplace that does not comply with the requirements of 18 U.S.C. § 930(g)(2). Thus, the court is not persuaded that plaintiff's RFRA claims implicate rights that are not subject to <u>Brown</u>'s anti-discrimination rationale.

### (2)  Lack of Supporting Authority

Plaintiff has not cited — and the court has not found — any case in which a federal court has held that with regard to the right to exercise one's sincerely held religious beliefs, the RFRA imposes a different, higher standard on federal employers than the standard imposed by Title VII.  Courts that have addressed allegations similar to those asserted in the instant action have held that RFRA claims asserted by federal employees that are intended to address the same basic injury as parallel claims asserted under Title VII are subsumed by the Title VII claims.  <u>See</u> <u>Francis</u>, 505 F.3d at 273 ("Federal employees like Francis, who allege religious discrimination, would have no need to exhaust their administrative remedies under Title VII if they could go directly to federal court with identical claims framed as RFRA claims."); <u>Francis v. Ridge</u>, 2005 WL 3747434, *3 (D. Virgin Islands December 27, 2005) (unpublished) (holding that "Title VII preempts

Plaintiff's RFRA claim"); <u>Molotsky v. Henderson</u>, 1999 WL 165683, *1
(E.D. Pa. March 9, 1999) (unpublished) ("RFRA's text and legisla-
tive history do not suggest Congressional intent to affect the
exclusivity of Title VII remedies to allow federal employees to
bring an employment discrimination claim under that Act.").

     (b)  Factual Basis for Plaintiff's Claims

     In support of her argument that her RFRA claims are based on
different facts than her Title VII claims, plaintiff argues that
her

> RFRA claim will . . . turn on different facts than her
> Title VII claim.  Her Title VII claim will turn on the
> existence of discrimination by the Government:  how the
> Government treats [plaintiff] and other Sikhs in
> comparison to other employees and faiths and whether
> there was any discriminatory intent motivating the
> adverse actions taken against [plaintiff].  RFRA looks
> instead at the burden on [plaintiff's] religious exercise
> — whether the regulations burden [plaintiff's] ability to
> live out her religion's precepts, and how deeply.[20]

In a footnote plaintiff explains that

> [t]he relevant facts for the Government's defense are
> also significantly different under RFRA.  The Government
> interest at stake must be examined to determine whether
> it is compelling, and the means used and alternatives
> proposed must be scrutinized to determine whether the
> Government's actions were in fact the least restrictive
> alternative.  Under Title VII, there is no need to
> examine facts to determine whether the government used
> the least restrictive alternative.[21]

---

[20]Plaintiff's Opposition to Motion for Partial Dismissal,
Docket Entry No. 20, p. 20.

[21]<u>Id.</u> at n.13.

Although plaintiff argues that her RFRA claim does not arise from the same facts as her Title VII claim, plaintiff has not identified any factual distinctions between the two claims. Instead, plaintiff has merely argued that the two claims are factually distinct because the elements of the two claims differ. Plaintiff's argument is analogous to one that was raised by the plaintiff and rejected by the Fifth Circuit in <u>Pfau</u>, 125 F.3d at 932-33. There the plaintiff argued, <u>inter alia</u>, that Title VII did not preempt her state law claim for the intentional infliction of emotional distress because the elements that a plaintiff must prove to establish a Title VII claim differed from the elements needed to establish a claim of intentional infliction of emotional distress. Citing <u>Brown</u>, 96 S.Ct. at 1966, the Fifth Circuit rejected this argument explaining that

> the fact that the legal elements a plaintiff must establish in order to state a claim of sexual harassment are different from those necessary to state a claim for intentional infliction of emotional distress does not preclude preemption because the same facts may establish different legal elements. For example, a claimant seeking to establish a claim of hostile environment discrimination must prove, among other things, that the claimant suffered unwelcome, harassing sexual conduct. <u>See</u> <u>Jones v. Flagship International</u>, 793 F.2d 714, 719-20 (5th Cir. 1986). A claimant seeking to establish a claim for intentional infliction of emotional distress must prove, among other things, that the claimant was subject to extreme and outrageous conduct. . . While these are distinct legal elements, the same facts may nonetheless establish both of them in many circumstances. By establishing the occurrence of sexually harassing conduct, a plaintiff may at the same time establish the existence of extreme and outrageous conduct.

<u>Id.</u> The same is true in the instant case.

For plaintiff to establish her Title VII claim for religious discrimination she must prove that she had a bona fide religious belief that conflicted with an employment requirement. See Bruff v. North Mississippi Health Services, Inc., 244 F.3d 495, 500 & n.9 (5th Cir.), cert. denied, 122 S.Ct. 348 (2001) (citing Weber v. Roadway Express, 199 F.3d 270 (5th Cir. 2000) (prima facie case of religious discrimination under Title VII requires plaintiff to allege that (1) she held a bona fide religious belief, (2) that conflicted with an employment requirement, (3) the employer was informed of that belief, and (4) she was discharged for failing to comply with the conflicting employment requirement)). For plaintiff to establish her RFRA claim she must prove that the IRS substantially burdened the exercise of her sincerely held religious belief. See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 126 S.Ct. 1211, 1219 (2006) (recognizing that prima facie case under the RFRA is established by showing that a government requirement (1) substantially burdens (2) a sincere (3) religious exercise).

While each of these claims requires the establishment of distinct legal elements, plaintiff nonetheless relies on the same allegations of fact to establish both, i.e., plaintiff alleges that her adherence to the Sikh faith requires her to wear a kirpan at all times, and that the IRS directed her to modify her kirpan to comply with the requirements of 18 U.S.C. § 930(g)(2), or to stop wearing her kirpan in the Leland Building. By establishing that

-19-

she holds a bona fide belief in the Sikh faith, which requires her at all times to wear a <u>kirpan</u> that cannot be modified to comply with 18 U.S.C. § 930, plaintiff may at the same time establish that the government has substantially burdened a sincere religious exercise. Because plaintiff relies on the same facts to establish both that the defendants violated RFRA by substantially burdening the exercise of her sincerely held religious belief, and that the defendants discriminated against her on the basis of her religious belief in violation of Title VII, the court concludes that the plaintiff's RFRA claim is "not sufficiently distinct" from her Title VII claim to avoid preemption. <u>See also</u> <u>Rowe v. Sullivan</u>, 967 F.2d 186, 189 (5th Cir. 1992); <u>Jackson v. Widnall</u>, 99 F.3d 710, 716 (5th Cir. 1996).

Plaintiff fails to demonstrate that her RFRA claim against the IRS and Treasury Department defendants is not precluded by the Fifth Circuit's reading of <u>Brown</u> to mean that "when the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim." <u>Pfau</u>, 125 F.3d at 933. Instead, acknowledging that this court is bound by the Fifth Circuit's decision in <u>Pfau</u>, 125 F.3d at 933, plaintiff notes that

> [i]n this regard, the Fifth Circuit explicitly splits with the Ninth Circuit, which permits additional claims based on the same facts if they are "more than [] discrimination." <u>Brock v. United States</u>, 64 F.3d 1421, 1423 (9th Cir. 1995); <u>Pfau</u>, 125 F.3d at 933 n.2 (confirming circuit split). Since this Court is bound by

-20-

> Pfau, [plaintiff] does not challenge it here, reserving
> the right to do so on appeal.[22]

Because this court is bound by the Fifth Circuit's application of

Brown in Pfau, and because both the RFRA and Title VII claims that

plaintiff has alleged in her complaint are based on identical

facts, the court concludes that the RFRA claims plaintiff has

asserted against the IRS and Treasury Department defendants are

preempted by the Title VII claims asserted against those same

defendants.

## C. Appropriate Defendant(s) for Plaintiff's Title VII Claim(s)

Defendants assert that

> [o]nce plaintiff's RFRA claim is dismissed against the
> IRS defendants, all of the defendants from the Department
> of Treasury except for Timothy Geithner, who is the only
> proper defendant under Title VII, should be dismissed
> from this lawsuit (i.e., the Department of Treasury, the
> IRS, Christina Navarette-Wasson, Sergio Arellano,
> James K. Ellis, and Nieves Narvaez).[23]

Pursuant to 42 U.S.C. § 2000e-16(c), the only appropriate defendant

in a Title VII claim brought by a federal employee is the "head of

department, agency, or unit."  Plaintiff was employed by the IRS,

which is a bureau of the Treasury Department.  Secretary Geithner

is the head of the Treasury Department.  Accordingly, Geithner is

the only defendant against whom plaintiff's Title VII claim may

---

[22]Id. at 17 n.11.

[23]Federal Defendants' Partial Motion to Dismiss, Docket Entry
No. 16, p. 15 n.7.

properly be asserted.   Thus, the defendants' motion to dismiss plaintiff's Title VII claims against all the individually named defendants except Geithner will be granted.

### III.  Conclusions and Order

For the reasons explained above, the Federal Defendants' Partial Motion to Dismiss (Docket Entry No. 16) is **GRANTED.**

The claims for retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, that plaintiff has asserted or attempted to assert against all defendants, including the individually named defendants in both their personal and official capacities, are **DISMISSED.**

The claims for religious discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, that plaintiff has asserted or attempted to assert against the United States Internal Revenue Service, the United States Treasury Department, and all of the individually named defendants, except Treasury Secretary Timothy Geithner, in both their personal and official capacities, are **DISMISSED.**

The claims for violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, et seq., that plaintiff has asserted or attempted to assert against the United States Internal Revenue Service, the United States Treasury Department, and all of the

individually named defendants in their personal capacity, are **DISMISSED**.

The only claims remaining in this action are (1) the claim for religious discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, that plaintiff has asserted against United States Treasury Secretary Timothy F. Geithner, and (2) the claims for violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, _et seq._, that plaintiff has asserted against the United States Department of Homeland Security, the Federal Protective Service, Janet Napolitano, William A. Carmody, III, David Hiebert, and any Does 1-25 employed by the United States Department of Homeland Security and/or the Federal Protective Service in their official capacity.

The initial pretrial and scheduling conference will be held on Friday, September 18, 2009, at 3:00 p.m. in Courtroom 9-B, Ninth Floor, United States Courthouse, 515 Rusk Street, Houston, Texas.

**SIGNED** at Houston, Texas, on this 21st day of August, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE